# STATE OF MICHIGAN

# COURT OF APPEALS

In re KLINE, Minor.

UNPUBLISHED
December 27, 2018

No. 343252
Gladwin Circuit Court
Family Division
LC No. 16-000105-NA

Before: SWARTZLE, P.J., and SAWYER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child, LK, under MCL 712A.19b(3)(c)(i) (conditions leading to adjudication continue to exist); (g) (failure to provide proper care or custody); and (h) (parent is imprisoned for such a period that the child would be deprived of a normal home for more than two years).[1] We affirm.

In January 2016, the Department of Health and Human Services (DHHS) requested that the trial court take jurisdiction over LK because respondent-father could not be located following a domestic violence incident in the home in which he and LK had resided. Respondent was eventually located and was lodged at the county jail on criminal charges related to the domestic violence incident. LK was initially placed with respondent's sister, who enlisted the assistance of respondent's brother to provide care for LK. Unfortunately, placement with respondent's siblings failed because neither sibling was willing or able to provide long-term care, and LK was placed into the foster care system. Respondent-father was ultimately convicted and sentenced to prison, with an earliest possible release date of June 21, 2020. He arranged for a limited guardianship for LK. However, the guardianship also failed, and LK was returned to foster care. In two years, LK was moved to four different homes. Respondent was unable to provide any other potential placement options.

Throughout this time, respondent's relationship with LK deteriorated. LK expressed no desire to have a relationship with respondent. Rather, LK indicated that her relationship with respondent was filled with fear and anxiety. LK repeatedly expressed her desire to be adopted,

---

[1] The trial court also terminated the parental rights of LK's mother, who could not be located and was believed to have relocated outside the state; however, she is not a party to this appeal.

-1-

and her foster family expressed their mutual desire to adopt her. Ultimately, DHHS sought termination of respondent's parental rights. Following a termination hearing, the trial court terminated respondent's parental rights.

## I. STATUTORY GROUNDS

On appeal, respondent argues that the trial court erred when it found that there was clear and convincing evidence to terminate his parental rights. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court's finding that a ground for termination has been established is reviewed for clear error. MCR 3.977(K); *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *Rood*, 483 Mich at 90.

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), which, at the time of the termination proceedings,[2] provided, in relevant part:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be

---

[2] MCL 712A.19b(3)(g) has been substantively amended, effective June 12, 2018. See 2018 PA 58.

able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the parent] had not accomplished any meaningful change in the conditions" that led to the court taking jurisdiction over the minor, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*).

In this case, the initial dispositional hearing was held on March 8, 2016, and the initial disposition order was entered the same day. The termination hearing was held on January 3, 2018, thereby satisfying the requirement that 182 or more days had elapsed since the issuance of the initial dispositional order. MCL 712A.19b(3)(c). Respondent's areas of needs were identified as "emotional stability behavior," "domestic relations," and "housing." More specifically, respondent's history of domestic violence and aggression had resulted in his incarceration, and respondent could not directly provide housing for LK. Respondent was required to undergo a psychological evaluation, follow the recommendations, and benefit from the services provided. Respondent was also required to address his aggression and PTSD.

At the time of the termination hearing, respondent remained incarcerated, with an earliest release date of June 21, 2020. Respondent admitted that he never fully completed any anger management courses, that he had an anger problem, and that he continued to experience anger and have outbursts. Further, following a failed guardianship attempt, respondent did not have any plan for LK's care.

On appeal, respondent does not deny that the conditions that led to the court taking jurisdiction remained unchanged. Instead, respondent argues that despite instituting a parent-agency agreement, DHHS left respondent to his own devices on every goal, failed to provide respondent any services, and created goals that were unachievable during incarceration. However, respondent's argument is unavailing. The record shows that in May 2016, respondent was complying with services and benefitting from counseling services being provided at the jail. Respondent's therapy ended when he was transferred to prison. However, the DHHS worker indicated that he believed that MDOC had counseling services available onsite to offenders, as needed. Indeed, during the termination hearing respondent reported that he was working with a psychiatrist to discuss his anger issues and request additional anger management classes.

Additionally, at one point, respondent reported that he had completed classes dealing with anger management. However, the DHHS worker did not believe that respondent benefited from these classes. During their conversations respondent still demonstrated aggression and

there were moments where the worker felt respondent was out of control. Respondent himself acknowledged that once he was in prison, he enrolled in an anger management course, but failed to complete it because he was transferred. Respondent testified that he completed a course called "Inside-Outside Dads" for incarcerated fathers. Although respondent indicated that he was unable to enroll in classes after his most recent prison transfer, he also indicated that he was working with a psychiatrist to request the classes. Further, respondent acknowledged that he never discussed with his DHHS worker his inability to get into classes.

The evidence shows that at least some services were available to respondent, and at least some goals could have been achieved during his incarceration. Despite these opportunities, respondent failed to show that he accomplished any meaningful change in the conditions that led to the court taking jurisdiction over LK. *Williams*, 286 Mich App at 272. Respondent's failure to benefit from the services available to him strongly indicates that offering additional services would have been futile. Furthermore, there is no question that respondent remains unable to provide proper care and custody of LK. Given these circumstances, the trial court did not err by determining that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering LK's age. MCL 712A.19b(3)(c)(*i*).[3]

## II. BEST INTERESTS

Respondent also argues that the trial court erred when it found by a preponderance of the evidence that termination of his parental rights was in LK's best interests. We disagree.

This Court reviews the trial court's determination of best interests for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *BZ*, 264 Mich App at 296-297. "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *Rood*, 483 Mich at 90.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Olive/Metts*, 297 Mich App at 40. When considering best interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental

---

[3] Because we conclude that the trial court did not clearly err by finding one statutory ground for termination of respondent's parental rights, we decline to address the propriety of termination under MCL 712A.19b(3)(g) and (h). See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Respondent also argues that the trial court erred by failing to address MCL 712A.19b(3)(j), the remaining ground for termination requested by DHHS. However, MCL 712A.19b(3) allows the trial court to order termination of parental rights if one or more statutory basis is shown by clear and convincing evidence. In this case, the trial court determined that three statutory bases for termination were shown by clear and convincing evidence, so it appropriately declined to address any further basis.

rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90.

"The trial court should weigh all the evidence available to determine the child's best interests." *In Re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors that the trial court may consider include "the child's wellbeing while in care, and the possibility of adoption." *White*, 303 Mich App at 714.

Respondent argues that the trial court erred by considering only two factors when determining whether termination was in LK's best interests—permanency and parental bond. We disagree. Among "a variety of factors," the strength of the bond between the child and the parent is only one factor for the court to consider. See *White*, 303 Mich App at 714. In this case, the trial court noted that respondent loved LK. However, LK expressed her desire to be adopted and that she felt safe and comfortable where she was placed. Accordingly, the trial court did not err by concluding that the parent-child bond had deteriorated.

However, respondent argues that DHHS contributed to the deteriorated parent-child bond by allowing only written communications, including a period of no communication.[4] This argument is unpersuasive. Throughout these proceedings, the trial court repeatedly granted respondent parenting time through written and telephonic communications. Indeed, one of the action steps outlined in respondent's parent-agency agreement indicated that respondent would begin to repair his relationship with LK by sending her letters. Additionally, the DHHS worker ensured that respondent was provided with envelopes and stamps to facilitate the communication. Respondent's communications with LK were suspended only after termination was requested, and that suspension was based on the impropriety of respondent's last letter to LK. Accordingly, it is clear that respondent's own actions caused a breakdown in the parent-child relationship, despite DHHS's efforts to maintain communication between respondent and LK.

It is also clear that the trial court considered respondent's parenting ability when evaluating whether termination of respondent's parental rights was in LK's best interests. The trial court noted that respondent lacked insight as to how his explosive anger affected LK, and that respondent lacked appropriate contact with LK throughout the case. Accordingly, this factor weighed in favor of the termination of respondent's parental rights.

Respondent further argues that the trial court failed to consider that respondent attempted to provide LK with permanency and that DHHS allowed LK to build relationships with outside placements before moving her to respondent's proposed placements. However, the trial court

---

[4] Respondent also repeats his argument that DHHS failed to provide respondent with services to help him maintain his relationship with LK. As already noted, respondent had access to services provided by MDOC, including a course for incarcerated fathers.

did recognize the various attempts to place LK with family members and a guardian that were made but were ultimately unsuccessful. The trial court also considered expert psychological testimony, which indicated that permanency, stability, and consistency were critical to LK's mental well-being. The trial court noted that respondent was unable to provide permanency for LK while he was in jail or prison. Further, the trial court noted LK's desire was to be adopted. Accordingly, the trial court did not err in determining by a preponderance of the evidence that termination of respondent's parental rights would provide LK with permanency and finality.

The trial court also appropriately considered LK's well-being while in care and the possibility of adoption. *White*, 303 Mich App at 714. The trial court noted that LK's foster family was willing to adopt her, and that LK had expressed her desire to remain in their home. The court concluded that, given LK's need and desire for permanence, adoption could provide LK the home she deserved. Accordingly, the trial court did not clearly err in its conclusion that the termination of respondent's parental rights was in LK's best interests, nor did the trial court inappropriately limit the number of factors it considered.

### III. DUE PROCESS

Respondent's final argument is that his due-process rights were violated for various reasons. For the reasons more fully explained below, we disagree.

We first note that respondent did not raise in the trial court any allegations that his due-process rights were violated. Accordingly, these issues are unpreserved. *In Re TK*, 306 Mich App 698, 703; 859 NW2d 206 (2014). We review unpreserved issues for "plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). In order to obtain relief under the plain error doctrine, it must be determined that (1) an error occurred, (2) the error was plain or obvious, and (3) the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error affects substantial rights when it causes prejudice and affects the outcome of the proceedings. *Id.*

"It is well established that parents have a significant interest in the companionship, care, custody, and management of their children. This interest has been characterized as an element of liberty to be protected by due process." *In re Brock*, 442 Mich 101, 109; 499 NW2d 752 (1993) (quotation marks and citation omitted). "Parents have a due process liberty interest in caring for their children." *VanDalen*, 293 Mich App at 132. Procedural due process requires that a party be provided notice of the nature of the proceeding and an opportunity to be heard by an impartial decision-maker at a meaningful time and in a meaningful manner. *TK*, 306 Mich App at 706. The substantive element of due process prohibits arbitrary deprivation of protected interests. *Id.*

Respondent argues that the trial court violated his due-process rights when it failed to require a new petition to be filed before re-opening the case following LK's guardianship. More specifically, respondent argues that the trial court no longer had jurisdiction once the guardianship was ordered and the neglect case was closed; therefore, the trial court erred by re-opening the protective proceedings without a petition and without taking proper jurisdiction. However, MCR 3.979(F)(6)(a) indicates that in situations where no successor is identified following a motion to revoke a juvenile guardianship,

[t]he court shall enter an order revoking the juvenile guardianship and placing the child under the care and supervision of the Department of Human Services . . . Jurisdiction over the child under MCL 712A.2(b) is reinstated under the previous child protective proceeding upon entry of the order revoking the juvenile guardianship. [MCR 3.979(F)(5).]

In May 2017, the trial court entered an order granting the guardian's petition to terminate guardianship and re-opened the neglect case, placing LK back under the care and custody of DHHS. Subsequently, respondent did not have any plan for LK's care. There is no question that LK required the services of DHHS in order to obtain proper care and custody. Accordingly, there was no need for a new petition before the trial court could reinstate jurisdiction over LK. Moreover, respondent received notice of the resumed proceedings and was granted an opportunity to be heard in accordance with his due-process rights. *TK*, 306 Mich App at 706. Accordingly, no error occurred. Rather, re-opening the protective proceedings allowed LK to obtain the placement and services she needed in an effective and efficient way in accordance with MCR 3.979(F)(5) and (6).

Respondent also argues that his due-process rights were violated because DHHS created the grounds for termination. Respondent raises various allegations that DHHS interfered with his proposed placements for LK. However, respondent's arguments are meritless. The record is clear that when a request was made to transition LK between respondent's siblings' homes, DHHS supported the transitions. Further, respondent himself acknowledged that LK's placement with his brother ended because his brother and his wife chose to end the placement without informing him. Moreover, respondent's attorney and the lawyer guardian ad litem agreed that a smooth transition was necessary when it came time to transition LK into her new guardianship. Given these facts, there is no error affecting respondent's substantial rights. LK's transition was intended to provide for her best interests, and on this record, it appears that respondent's counsel supported such a plan.

Respondent also repeats his assertions that DHHS failed to provide respondent with any services to address relationship-building between himself and LK, and that he was repeatedly denied face-to-face visitations with LK or the opportunity to be involved in LK's counseling. As discussed above, respondent participated in several services provided by MDOC, although he did not complete all of them. Further, respondent has not explained how his failure to exercise face-to-face visits in a jail or prison setting or participate in LK's counseling sessions constitutes a deprivation of his due-process rights. Respondent fails to cite any authority in support of this argument. This Court is not required to unravel and elaborate on respondent's arguments and may deem the argument waived. *People v Cameron*, 319 Mich App 215, 232; 900 NW2d 658 (2017).[5]

Lastly, respondent argues that the trial court erroneously denied his counsel's request to adjourn the termination hearing after counsel indicated that there was some difficulty contacting

---

[5] However, we do note that the trial court addressed respondent's request for face-to-face visits and concluded that such a visit would be harmful to LK.

respondent after she was appointed. A respondent in a termination proceeding is entitled to representation by an attorney. *Williams*, 286 Mich App at 274. In this case, respondent was appointed counsel. Although respondent's counsel requested an adjournment, counsel acknowledged prior to the termination hearing that she was able to speak with respondent and that respondent had also written to her. Counsel would have preferred more time to go over documents with respondent, but she never expressed that she was not able to proceed in his defense. Respondent has not shown how the trial court's denial of an adjournment constituted an error affecting his substantial rights, and on this record no prejudice is evident. *Carines*, 460 Mich at 763. Respondent was provided notice of the nature of the proceedings and an opportunity to be heard. *TK*, 306 Mich App at 706.

Affirmed.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Amy Ronayne Krause